**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | **Chapter 13** |
| **RACHEL BLAYLOCK,** | : | |
| Debtor. | : | **Bky. No: 03-19948 (ELF)** |

| | | |
|---|---|---|
| | : | |
| | : | |
| **CITY OF PHILADELPHIA,** | : | |
| | : | **Adv. No. 07-0224** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **RACHEL BLAYLOCK,** | : | |
| | : | |
| Defendant. | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

After obtaining post-confirmation relief from the automatic stay in the above chapter 13

bankruptcy case, the City of Philadelphia filed a petition ("the Sale Petition") in the Court of

Common Pleas, Philadelphia County ("the CP Court") requesting the entry of an order

authorizing a tax sale of the residential real estate ("the Property") owned by the debtor, Rachel

Blaylock ("the Debtor").  The Sale Petition alleges that the Debtor is delinquent in paying real

estate taxes that accrued postpetition.

The Debtor filed a response to the Sale Petition ("the Response to the Sale Petition") in

the CP Court, and then removed the proceeding to this court, thereby commencing this adversary

proceeding.  After a hearing on the merits held on January 28, 2008, I took the matter under

advisement.[1]

For the reasons set forth below, I will deny the Sale Petition due to the City's failure to

demonstrate that it has satisfied all of the statutory requirements for the issuance of an order

authorizing the sale of the Property under 53 P.S. §7283.

## II.  BACKGROUND

The Debtor filed a petition under chapter 13 of the Bankruptcy Code on June 30, 2003.

As of the petition date, the Debtor was the owner of certain real property located at 524 North

38th Street, Philadelphia, Pennsylvania ("the Property").

In the chapter 13 case, the Debtor filed a secured proof of claim on the City's behalf for

$2,500.00, an amount purporting to represent her entire prepetition debt for water bills and real

estate taxes.  See Fed. R. Bankr. P. 3004 (authorizing debtor to file proof of claim if creditor does

not file timely claim).  The Debtor filed an Amended Chapter 13 Plan ("Amended Plan") on

September 20, 2004.  See Main Bankruptcy Case Docket Entry No. 34.  That plan provided, inter

alia, that:

> •    the Debtor had filed a secured proof of claim for the City for $2,500.00
>      and that amount would be paid to the City in full satisfaction of any claims
>      the City had against the Debtor for taxes and water and sewer charges and
>      that payment of this amount would discharge all debts owed to the City;[2]

---

[1]    At the conclusion of the hearing, the parties requested that the court defer its ruling as
they believed that there was a reasonable prospect for settlement of this dispute.  No settlement has been
reported to the court.

[2]    See Amended Plan ¶4.

2

- upon confirmation of the plan, title in property of the estate would vest in the Debtor;[3] and

- upon completion of the plan, all debts listed in the Debtor's schedules or provided for in the plan, including the claims of the City, which are dischargeable shall be discharged.[4]

This court entered an Order confirming the Debtor's Amended Plan on October 26, 2004. See Main Bankruptcy Case Docket Entry No. 40. After missing certain plan payments, the Debtor filed a Motion to Amend Plan Post-Confirmation on July 11, 2005, proposing to increase the monthly payment amount due to the Trustee. See id. No. 49. The court approved the Motion to Amend Plan Post-Confirmation and the Debtor's post-confirmation Second Amended Plan on August 23, 2005. See id. No. 55.

On October 27, 2006, the City filed a Motion to Dismiss the Chapter 13 Case or Alternatively, for Relief from the Automatic Stay, alleging that the Debtor had not paid postpetition water bills incurred at the Property and that the Debtor had failed to pay her 2005 and 2006 real estate taxes. See id. No.74. After a hearing and by Order dated December 15, 2006, this court denied the City's Motion to Dismiss, but granted the Motion for Relief from the Automatic Stay, permitting the City to "invoke those remedies for collection of the unpaid post-confirmation obligations available to it under applicable non-bankruptcy law." See Order

---

[3]        See Amended Plan ¶6. The Amended Plan mistakenly includes two paragraph 6's. This provision is found in the second of the paragraphs that bears the number 6.

[4]        See Amended Plan ¶¶8,10.

3

¶2, Main Bankruptcy Case Docket Entry No. 83.[5]

Thereafter, the City filed a claim in the CP Court under the statute "popularly known as

the Municipal Claims and Tax Lien Law,"[6] 53 P.S. §§7100 et seq. ("the MCTLL"), for unpaid

real estate taxes against the Property in the amount of $1,009.67 on March 18, 2006.  See id.

§7143 (a claim for taxes must be filed in Court of Common Pleas of county in which property is

situated).  On June 8, 2007, the City filed the Sale Petition pursuant to §7283 of the MCTLL.[7]

---

[5]     At the hearing on the City's Motion for Relief from the Automatic Stay, I expressed
some doubt whether the automatic stay even applied to the City's proposed collection activity and
whether relief was necessary in light of the facts that: (a) the City intended to pursue collection of
postpetition claims that were not provided for by the plan and (b) the Property had revested in the Debtor
upon confirmation of her chapter 13 plan, see 11 U.S.C. §1327(b), and was no longer property of the
estate.  See 11 U.S.C. §362(a) (generally speaking, automatic stay restrains actions to collect prepetition
claims or to enforce such claims against property of bankruptcy estate).

[6]     Newberry Township. v. Stambaugh, 848 A.2d 173, 177 (Pa. Commw. 2004), appeal
denied, 860 A.2d 491 (Pa. 2004) (Table).

[7]     Section 7283 of the MCTLL authorizes a claimant that has filed a tax or municipal claim
to petition the court for permission to sell property free and clear of encumbrances to satisfy the tax or
municipal debts from the sale proceeds.  Section 7283 provides:

> In addition to the remedies prescribed in sections 28, 31 and 31.1 of this act, in
> cities of the first class, whenever a claimant has filed its tax or municipal claim
> in accordance with the requirements of this act, it may file its petition in the
> court in which the proceeding is pending, setting forth the facts necessary to
> show the right to sell, together with searches or a title insurance policy, showing
> the state of record and the ownership of the property, and of all tax and
> municipal claims, mortgages, ground rents or other charges on, or estates in, the
> land, as shown by the official records of the city or county, or the political
> subdivision in which the real estate is situate, and thereupon the court shall grant
> a rule upon all parties thus shown to be interested, to appear and show cause why
> a decree should not be made that the property be sold, freed and cleared of their
> respective claims, mortgages, ground rents, charges and estates. If upon a
> hearing, the court is satisfied that service had been made of the rule upon the
> parties respondent in the manner provided in this act for the service of writs of
> scire facias to obtain judgments upon tax and municipal claims, and that
> contemporaneously with the service of the rule on the parties respondent notice
> of the rule has been published by the claimant in at least one newspaper of

On June 8, 2007, the CP Court issued a Rule to Show Cause why the court should not

enter a decree permitting the sale of the Property by the Sheriff of Philadelphia County.  The

Debtor filed the Response to the Sale Petition on June 18, 2007.

In the Response to the Sale Petition, the Debtor denied that the Tax Information

Certificate described any unpaid real estate taxes or that the Sale Petition accurately reflected the

information contained within the Tax Information Certificate.  Response to Sale Petition ¶¶2-3.

The Debtor's Response to the Sale Petition also included a New Matter that alleged that the

Debtor had attempted to negotiate a payment plan with the City to pay her postpetition

obligations but that the City's representatives refused to negotiate with the Debtor unless she

agreed to pay prepetition obligations that would be discharged in her chapter 13 bankruptcy

case.[8]

---

general circulation in the county, and in a legal periodical published therein, if
any, and that the facts stated in the petition be true, it shall order and decree that
the property be sold at a subsequent sheriff's sale at a time to be fixed thereafter
by the claimant, clear of all claims, liens, mortgages, ground rents, charges and
estates, to the highest bidder at such sale and after payment of the tax or
municipal lien the balance of the proceeds realized therefrom, shall be
distributed in accordance with the priority of the remaining claims, liens,
mortgages, ground rents, charges and estates, and the purchaser at such sale shall
take and forever thereafter have, an absolute title to the property sold, free and
discharged of all tax and municipal claims, liens, mortgages, ground rents,
charges and estates of whatsoever kind, subject only to the right of redemption as
provided by law. The date of the sale shall be advertised in at least one
newspaper of general circulation in the county and in the legal periodical
published therein.

[8]    The confirmed plan provides for full payment of the City's prepetition secured claim.
Because the City did not file a proof of claim, the Debtor filed a claim on its behalf and filed it for the
amount the Debtor contended she owed, i.e., $2,500.00.  See Fed. R. Bankr. P. 3004.  The City did not
seek to amend the claim the Debtor filed, even though its counsel stated at the hearing in this proceeding
that the City believes its prepetition secured claim far exceeds the amount of the claim the Debtor filed.
Thus, if the Debtor completes her chapter 13 plan successfully, the City may be bound to accept the
payment of $2,500.00 in full satisfaction of its prepetition claim.  See 11 U.S.C. §§1327(a), 1328(a); In

The Debtor filed a Notice of Removal to this court on June 26, 2007.  See Adversary

Docket Entry No. 1.  In this court, she asserts that the City unlawfully discriminated against her

in violation of 11 U.S.C. §525(a)[9] due to its refusal to offer her payment terms on her post-

petition delinquent real estate tax debt.

The City denies that any unlawful discrimination occurred.  The City asserts that it has

broad discretion to grant or deny payment plans to delinquent taxpayers and that it exercised that

discretion without consideration of the Debtor's bankruptcy status or her nonpayment of a

dischargeable debt.  Rather, the City claims that it declined to offer the Debtor a payment plan

based on the Debtor's payment history generally and, more specifically, on its belief that the

Debtor had already breached a postpetition installment payment plan for her 2005 and 2006 real

estate taxes  –  postpetition debts that are nondischargeable and that were not provided for in the

---

re Bryant, 323 B.R. 635, 642-45 (Bankr. E.D. Pa 2005).  The City appears to concede as much.  In these
circumstances, the Debtor suggests that the City's refusal to enter into a payment plan for the postpetition
taxes for years 2005 and 2006 is a response to the City's perception that it was "shortchanged" in the
bankruptcy case  – in effect, that the City's refusal to negotiate a payment agreement with respect to the
delinquent taxes was based on the Debtor's impending discharge of a prepetition debt.

[9]        11 U.S.C. §525(a) provides in relevant part:

a governmental unit may not deny, revoke, suspend, or refuse to renew a license,
permit, charter, franchise, or other similar grant to, condition such a grant to,
discriminate with respect to such a grant against, deny employment to, terminate
the employment of, or discriminate with respect to employment against, a person
that is or has been a debtor under this title or a bankrupt or a debtor under the
Bankruptcy Act, or another person with whom such bankrupt or debtor has been
associated, solely because such bankrupt or debtor is or has been a debtor under
this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent
before the commencement of the case under this title, or during the case but
before the debtor is granted or denied a discharge, or has not paid a debt that is
dischargeable in the case under this title or that was discharged under the
Bankruptcy Act.

Debtor's confirmed chapter 13 plan.[10]  According to the City, its conduct was unrelated to

bankruptcy case, was not proximately caused by the Debtor's bankruptcy status or the

(impending) discharge of prepetition debts,[11] and did not violate §525(a).

### III.  DISCUSSION

### A.

Before the trial began, the City orally moved to dismiss the adversary or remand the

matter to the CP Court for want of proper removal to the bankruptcy court.  I orally denied the

City's pretrial motions and trial of the adversary proceeding was held.  I begin, as I must, by

considering whether this court has jurisdiction over this adversary proceeding and to explain I

why the exercise of the court's jurisdiction was and continues to be proper..  See Steel Co. v.

Citizens for a Better Env't, 523 U.S. 83, 93-94, 118 S. Ct. 1003, 1012 (1998); Goode v. City of

Philadelphia, 2008 WL 3306656, at *14 (3d Cir. Aug. 12, 2008); In re Hechinger Inv. Co. of

Delaware, Inc., 335 F.3d 243, 249 (3d Cir. 2003).

At trial, the City argued that the Debtor failed to file the Notice of Removal in the CP

Court, as required by Fed. R. Bankr. P. 9027(c), resulting in a failure to perfect the bankruptcy

---

[10]     The Debtor responds by disputing that any payment arrangement was in place for the
2005 and 2006 taxes.  Based upon my disposition of the merits of the Sale Petition, it is unnecessary to
resolve this factual dispute.

[11]     See Federal Communications Comm'n v. NextWave Personal Communications, Inc., 537
U.S. 293, 301-02, 123 S. Ct. 832, 839 (2003) (requirement that the conduct of a governmental unit be
based "solely" on the debtor's status as a bankruptcy debtor, the debtor's insolvency or the failure to pay
a dischargeable debt means that one of those factors proximately caused the adverse action at issue); In re
Valentin, 309 B.R. 715, 721-22 (Bankr. E.D. Pa. 2004) (same).

court's jurisdiction over this proceeding.  The City also moved to dismiss the adversary

proceeding under Fed. R. Civ. P. 12(h)(4) for lack of subject matter jurisdiction.[12]

The Debtor countered the City's first motion by asserting that the Notice of Removal <u>was</u>

filed in the CP Court, although she produced no evidence in support of this assertion.  A review

of the docket in the state court proceeding shows that the Notice of Removal has not been filed

there.  <u>See</u> Exhibit C-1.

As for the second motion, the Debtor asserted that the bankruptcy court has subject matter

jurisdiction based upon the federal issue she raised as a New Matter in the Response to the Sale

Petition described above.  Although no federal statute is cited in the pleading, she depicted her

New Matter as the assertion of her rights under 11 U.S.C. §525(a), which prohibits

discrimination by a governmental unit based solely upon a debtor's bankruptcy filing or failure to

pay dischargeable debt.

As explained below, I conclude that the bankruptcy court has jurisdiction over this

removed proceeding, but not for the reasons the Debtor articulated.

### 1.  Failure to Comply with Fed. R. Bankr. P. 9027(c)

28 U.S.C. §1452(a) provides:

> A party may remove any claim or cause of action in a civil action other than a
> proceeding before the United States Tax Court or a civil action by a governmental
> unit to enforce such governmental unit's police or regulatory power, to the district
> court for the district where such civil action is pending, if such district court has
> jurisdiction of such claim or cause of action under section 1334 of this title.

---

[12]    I note that if I were to accept either of the two (2) arguments the City raised, the proper
relief would be a remand of the removed proceeding, not dismissal.  <u>See, e.g.</u>, <u>C & A, S.E. v. Puerto Rico
Solid Waste Mgmt. Auth.</u>, 369 B.R. 87, 90 (D.P.R. 2007).

The procedure for removal under §1452(a) is governed by Fed. R. Bankr. P. 9027(a).  See

In re Boyer, 108 B.R. 19, 24 (Bankr. N.D.N.Y. 1988) ("the removal of claims or causes of action

related to bankruptcy cases is now governed substantively by 28 U.S.C.A. § 1452(a) and

procedurally by Fed.R.Bankr.P. 9027").  Rule 9027(a) requires that a notice of removal be filed

with the clerk of the federal district and division where the proceeding being removed is pending.

Rule 9027(c) then provides that "[p]romptly after the filing of the notice of removal," the

removing party shall file "a copy of it with the clerk of the court from which the claim or cause

of action is removed."  Id. (emphasis added).  Rule 9027(c) further states that removal "is

effected on such filing of a copy of the notice of removal."

On its face, the above-quoted text of Rule 9027(c) appears to state that a removal is not

effective until a copy of the notice of removal has been filed in the court from which the

proceeding has been removed.  Here, the record suggests that the Debtor never complied with

Rule 9027(c)  –  hence, the City's argument that the Sale Petition proceeding was never

effectively removed to this court.  However, the case law instructs that the bankruptcy court's

jurisdiction  attaches upon compliance with Rule 9027(a) and that the failure to comply with

Rule 9027(c) does not create a jurisdictional defect.

According to the case law, in the time period after the notice of removal has been filed in

compliance with subdivision (a) of Rule 9027 and before there has been compliance with

subdivision (c), the bankruptcy court and the court of origin have concurrent jurisdiction over the

removed proceeding.  Only after a copy of the notice of removal has been filed in the court of

origin pursuant to subdivision (c) is the court of origin's jurisdiction terminated.  See 10 Collier

on Bankruptcy ¶9027.07 (15th rev. ed. 2008) ("When a party files a notice of removal in federal

9

court and sometime thereafter files a copy of the notice in state court, the two courts probably

share concurrent jurisdiction during the interim period, and the parties are not yet barred from

taking action in the state court."); <u>see also</u> <u>Nixon v. Wheatley</u>, 368 F. Supp. 2d 635, 640 (E.D.

Tex. 2005) (under 28 U.S.C. §1446(d), filing of notice of removal commences federal

jurisdiction and failure to file notice in state court does not defeat federal jurisdiction); <u>Parker v.

Malone</u>, 2004 WL 190430, at *2 (W.D. Va. Jan. 15, 2004) ("federal jurisdiction commences

when the defendant files the notice of removal with the district court, and filing the notice with

the state clerk affects the state's jurisdiction rather than federal jurisdiction") (citing <u>Peterson v.

BMI Refractories</u>, 124 F.3d 1386, 1395 (11th Cir.1997)); <u>Boyce v. Saint Paul Fire & Marine Ins.

Co.</u>, 1993 U.S. Dist. LEXIS 728 (E.D. Pa. Jan. 28, 1993) (federal jurisdiction attaches with filing

of notice of removal under 28 U.S.C. §1446(d) and state and federal courts share concurrent

jurisdiction until requirements of §1446(d) have been satisfied).[13]

Based on the legal authorities above, I have denied the City's motion to dismiss this

adversary proceeding for failure to comply with Fed. R. Bankr. P. 9027(c).

---

[13]     The Advisory Committee Note to Rule 9027 states that subdivision (c) is "patterned on"
28 U.S.C. §1446(e), which has since been redesignated as §1446(d).  Thus, in construing Fed. R. Bankr.
P. 9027, it is appropriate to refer to cases construing §1446.  Section 1446(d) states:

> Promptly after the filing of such notice of removal of a civil action the defendant
> or defendants shall give written notice thereof to all adverse parties and shall file
> a copy of the notice with the clerk of such State court, which shall effect the
> removal and the State court shall proceed no further unless and until the case is
> remanded.

## 2.  Subject Matter Jurisdiction Under 28 U.S.C. §1334(b)

The next question is whether, notwithstanding the Debtor's invocation of this court's

jurisdiction through exercise of the removal power of 28 U.S.C. §1452(a) as implemented by

Fed. R. Bankr. P. 9027, this court has subject matter jurisdiction over the proceeding.  If a

bankruptcy court has no subject matter jurisdiction to consider a removed proceeding, the

litigation must be remanded.  See, e.g., In re Santa Clara County Child Care Consortium, 223

B.R. 40, 49-50 (B.A.P. 1st Cir. 1998).

Federal bankruptcy jurisdiction is set forth in 28 U.S.C. §1334.  Section 1334(a) confers

"original and exclusive jurisdiction of all cases under title 11" upon the district courts.  Section

1334(b) confers "original but not exclusive jurisdiction of all civil proceedings arising under title

11, or arising in or related to cases under title 11."

Our Court of Appeals has summarized the framework governing a bankruptcy court's

jurisdiction this way:

> Bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases "under"
> title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" a case
> under title 11; and (4) proceedings "related to" a case under title 11.

Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006); accord In re Combustion Eng'g, Inc., 391

F.3d 190, 225-26 (3d Cir. 2004).[14]

The Debtor appears to suggest that this proceeding, which was originally initiated in the

---

[14]     Section 1334 confers bankruptcy jurisdiction on the district court, not the bankruptcy
court.  However, 28 U.S.C. §157(a) authorizes the district court to refer cases "under title 11," as well as
proceedings "arising under title 11 or arising in or related to cases under title 11" to bankruptcy courts.
28 U.S.C. §157(a).  In this district, the district court has adopted a Standing Order, pursuant to which
cases meeting the criteria set forth in 28 U.S.C. §157(a) are referred to the bankruptcy court.  See, e.g., In
re Lassina, 261 B.R. 614 (Bankr. E.D. Pa. 2001).

CP Court, falls within this court's "arising under" jurisdiction because the Debtor has asserted a defense to the Sale Petition based on §525(a) of the Bankruptcy Code.  "Arising under" jurisdiction may be invoked where a party asserts "a substantive right provided by title 11." Stoe, 436 F.3d at 216 (quoting In re Guild & Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d Cir. 1996)).

The Debtor's theory is at odds with the well-established principle that a federal defense to a state law cause of action does not provide a basis for a federal court to exercise federal question subject matter jurisdiction.  Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808, 106 S. Ct. 3229, 3232 (1986); Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 10, 103 S. Ct. 2841, 2846 (1983); see also Holmes Group, Inc. v. Vornado Air Circulation Sys. Inc., 535 U.S. 826, 831, 122 S. Ct. 1889, 1893-94 (2002).  In the context of bankruptcy jurisdiction, our Court of Appeals has expressly stated:

> The fact that federal bankruptcy law is implicated as a defense to [a] claim, does not change the fact that [the] claim itself does not "arise under" title 11. The Bankruptcy Code did not create [the] cause of action.

Stoe, 436 F.3d at 217.

Based on these principles, I conclude that this court lacks subject matter jurisdiction over the Sale Petition on the ground that in the course of its collection efforts, it is alleged that the City has violated 11 U.S.C. §525(a).  However, I conclude that this court does have jurisdiction on other grounds, namely §1334(b) "related to" jurisdiction.

To exercise "related to" jurisdiction, I must find that the outcome of the removed CP Court proceeding conceivably could have an effect on the Debtor's estate.  See Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984).  With respect to this standard, the Court of Appeals

has observed that:

> Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will
> exist so long as it is possible that a proceeding may impact on the debtor's rights,
> liabilities, options, or freedom of action or the handling and administration of the
> bankrupt estate.

Halper v. Halper, 164 F.3d 830, 837 (3d Cir. 1999) (quoting In re Marcus Hook, 943 F.2d 261,

264 (3d Cir. 1999)).

Here, by virtue of the Sale Petition, the Property was and is potentially subject to judicial

sale to satisfy delinquent tax and municipal debts.  At the time of removal and through the date

of the trial, a sale of the Property would have adversely affected the Debtor's ability to effect the

purpose of her chapter 13 plan (i.e., to pay off City liens and save her home) and may have

necessitated an amendment to the plan.  At those times, sale of the Property also might have

resulted in the City's prepetition claim having been paid in full, which would have altered the

chapter 13 Trustee's distribution of the Debtor's plan payments.  Thus, the removed CP Court

proceeding could have had an impact on the administration of the chapter 13 estate in this court

and was related to the bankruptcy case within the meaning of §1334(b).  For these reasons, I

conclude that, at the time of the removal and at the time of trial, this court had subject matter

jurisdiction under §1334(b).  See In re Shuman, 277 B.R. 638, 649 (Bankr. E.D. Pa. 2001)

(evaluating federal subject matter jurisdiction as of the date the federal proceeding is filed).

After a proceeding has been removed, it is possible for subsequent developments in the

bankruptcy case to eliminate the possible effect that the outcome of the removed proceeding may

have on the administration of the bankruptcy estate.  The most extreme example of a subsequent

development is dismissal of the case.  Perhaps by definition, after dismissal of a bankruptcy case,

13

a pending adversary cannot affect the administration of the bankruptcy case.  For this reason,

bankruptcy courts routinely dismiss pending adversary proceedings upon the dismissal of the

main bankruptcy case.  See In re Smith, 866 F.2d 576, 580 (3d Cir. 1989); In re Patriot

Contracting Corp., 2008 WL 934402, at *2 (Bankr. D.N.J. Apr. 1, 2008); In re Ragland, 2006

WL 1997416, at *5 (Bankr. E.D. Pa. 2007).

        Here, the Notice of Removal was filed close to the end of the payment term of the

Debtor's chapter 13 plan.  Recently (and while this proceeding was under advisement), the

Debtor advised in a court filing that she has completed her chapter 13 plan payments.  See

Adversary Docket Entry No. 13.  The Debtor's completion of her plan payments eliminates the

possibility of any post-confirmation modification of her chapter 13 plan.  See 11 U.S.C.

§1329(a).  Further, the Debtor having completed her plan payments, it is likely that the chapter

13 Trustee will complete his distribution within the next thirty (30) days.  This leads me to

conclude there is no longer any possibility that the outcome of this removed proceeding can alter

the bankruptcy estate's distribution to creditors.[15]

        The above recitation demonstrates that this removed proceeding was related to the

bankruptcy case when it was removed and tried, but due to the passage of time and developments

in the bankruptcy case, it is no longer "related to" the bankruptcy case within the meaning of 28

U.S.C. §1334(b).  Nevertheless, in its discretion, a bankruptcy court may retain and continue to

exercise bankruptcy jurisdiction that properly attached at the time an adversary proceeding was

---

        [15]        From the time this court might grant the Sale Petition and authorize a sale of the
Property, it would take several months before the sale could be conducted under state law.  It is an almost
certainty that the chapter 13 Trustee will complete his distribution before a sale can take place.  Thus, the
sale of the Property cannot alter the bankruptcy distribution.

14

commenced.  See In re Smith, 866 F.2d at 580; In re Stardust Inn, Inc., 70 B.R. 888, 890-91

(Bankr. E.D. Pa. 1987).  The court has discretion to retain jurisdiction of an adversary proceeding

after dismissal of the main case based on considerations of: (1) judicial economy; (2) fairness and

convenience to the litigants; and (3) the degree of difficulty of the related legal issues involved.

In re Trusty, 2007 WL 3274420, at *3 (Bankr. E.D. Pa. Nov. 5, 2007) (citing In re Smith, 866

F.2d at 580).  Because this proceeding has already been tried by the parties, I consider it equitable

and appropriate to exercise my discretion to maintain jurisdiction over the proceeding and issue a

decision.

For these reasons, this court has jurisdiction over this matter to decide the merits of the

dispute.[16]

**B.**

To decide this case, I must determine: (1) whether the City established its entitlement to

an order authorizing the sale of the Property under 53 P.S. §7283 and, if so, (2) whether the

Debtor made out an affirmative defense under 11 U.S.C. §525(a).  As explained below, I

conclude that the City did not prove its case under §7283.  Therefore, I need not decide the merits

of the Debtor's §525(a) affirmative defense.[17]

---

[16]      In a related proceeding, the bankruptcy court may not enter a final judgment and but may
only submit proposed findings of fact and conclusions of law to the district court for de novo review, see
28 U.S.C. § 157(c)(1), unless all parties agree that a final judgment may be entered in the bankruptcy
court.  See 28 U.S.C. § 157(c)(2); Halper,164 F.3d at 836.  The parties have consented to the entry of a
final judgment by the bankruptcy court.  See Adversary Docket Entry Nos. 13, 14.

[17]      I note that there is a serious question whether an installment agreement to pay delinquent
real estate taxes is a "license, permit, charter, franchise or other similar grant" within the meaning of 11
U.S.C. §525(a).  The City has cited a line of cases discussing whether the Internal Revenue Service's

In Pennsylvania, the MCTLL sets forth a comprehensive scheme for assessment, recording, priority and enforcement of municipal claims and tax liens.  One of the collection remedies available to the City for the collection of unpaid municipal taxes and claims is found in §7283 of the MCTLL.[18]  Under §7283, the City may cause real property to be sold due to a property owner's failure to pay real estate taxes.  Specifically, the City may obtain a court order directing that the subject property be sold at a sheriff's sale.  Id.

By its terms, §7283 requires that in a Sale Petition, the City:

1.   prove that it has filed a claim in accordance with the MCTLL;[19]

2.   set forth evidence regarding the ownership of and liens against the subject property; and

3.   provide notice to interested parties in the manner required by the MCTLL (including publication).

---

refusal to process or consider an offer in compromise under 26 U.S.C. §7122(a), from an individual who has filed bankruptcy, violates 11 U.S.C. §525(a).  The prevailing view on the issue appears to be that the IRS' policy of declining to process offers in compromise requested by bankruptcy debtors does not adversely impact a "license, permit, charter, franchise or other similar grant"  and is not remediable under §525(a).  See In re Uzialko, 339 B.R. 579 (Bankr. E.D. Pa  2006); 1900 M Rest. Assocs. v. United States (In re 1900 M Rest. Assocs.), 319 B.R. 302, 304 (Bankr. D.D.C. 2005); In re Macher, 2003 Bankr. LEXIS 2011, 2003 WL 23169807 (Bankr. W.D. Va. June 5, 2003); In re Holmes, 298 B.R. 477 (Bankr. M.D. Ga. 2003).  But see In re Mills, 240 B.R. 689, 692 (Bankr. S.D. W. Va. 1999).  However, some courts have granted relief to debtors on other grounds.  See, e.g., In re Macher, 2003 Bankr. LEXIS 2011, at *6-10 (IRS policy conflicts with Bankruptcy Code policies and interferes with debtor's ability to obtain fresh start and IRS is directed to receive and consider debtor's offer in compromise); In re Holmes, 298 B.R. 477 (offer in compromise is not license within meaning of §525(a) however, pursuant to its equitable powers under §105(a), court directed IRS to receive and consider offer in compromise).  In this proceeding, I do not reach the issue.

[18]      Section 7283 applies to "cities of the first class."  The City of Philadelphia is a "city of the first class."  E.g., Nutter v. Dougherty, 938 A.2d 401, 403-04 n.4 (Pa. 2007).

[19]      See 53 P.S. §7143.

16

If these requirements are satisfied, the court "shall order and decree that the property be sold at a subsequent sheriff's sale . . . ." Id.

I will assume, without deciding, that the City has satisfied the first two (2) requirements under §7283.[20]  Because, however, the City has not satisfied the third requirement, I will deny the Sale Petition.

Section 7283 provides that upon the filing of a petition setting forth the requisite information, "the court shall grant a rule upon all parties thus shown to be interested, to appear and show cause why a decree should not be made that the property be sold, freed and cleared of their respective claims, mortgages, ground rents, charges and estates." (emphasis added).  The phrase "all parties thus shown to be interested" necessarily refers to the requirement that the petition set forth "the state of record and the ownership of the property, and of all tax and municipal claims, mortgages, ground rents or other charges on, or estates in, the land." (emphasis added).  Thus, §7283 provides for the rule to show cause to be issued upon every party identified in the petition and attached title information as having an interest in the subject property.

The following sentence of §7283 then sets forth the requirements for service of the rule to show cause upon the interested parties:

> If upon a hearing, the court is satisfied that service had been made of the rule upon the parties respondent in the manner provided in this act for the service of writs of scire facias to obtain judgments upon tax and municipal claims, and that contemporaneously with the service of the rule on the parties respondent notice of the rule has been published by the claimant in at least one newspaper of general

---

[20]      The City introduced evidence that it had filed a claim pursuant to the MCTLL for delinquent taxes.  Also, the Sale Petition included evidence regarding ownership of and liens against the Property in the form of a "Tax Information Certificate" prepared by a title company.

17

circulation in the county, and in a legal periodical published therein, if any, and
that the facts stated in the petition be true, it shall order and decree that the
property be sold at a subsequent sheriff's sale at a time to be fixed thereafter by
the claimant, clear of all claims, liens, mortgages, ground rents, charges and
estates, to the highest bidder at such sale . . . .

(emphasis added).

Two points need to be made about the above quoted text.  First, on its face, §7283

purports to require that service of the rule to show cause on "the parties respondent" be

accomplished in a particular manner (i.e., the same manner as the service of writs of scire facias,

see 53 P.S. §7186).  Second, its plain language (i.e., the phrase "if the court is satisfied") imposes

an affirmative duty on the court to insure that service of the rule to show cause has been made in

the manner required by the statute before issuing an order for the sale of the subject property.

Placing such a duty on the court is consistent with the procedural scheme because the statutorily

mandated procedure is designed to provide all parties with an interest in the subject property with

notice and an opportunity to be heard before the court issues an order authorizing a sale that may

divest their property rights.  See, e.g., First Union Nat'l Bank v. F.A. Realty Investors Corp., 812

A.2d 719, 726 (Pa. Super. 2002).

Returning to the required manner of service, the Legislature appears to have indirectly

amended §7283 insofar as that provision, on its face, incorporates the service requirements for

writs of scire facias found in §7186.  Section 7193.2 of the MCTLL, enacted in 1992,[21] provides

specifically for the manner of service of a rule to show cause under §7283.  See F.A. Realty

Investors Corp., 812 A.2d  at 725.  Section 7193.2 requires that the rule to show cause:

---

[21]      Section 7193.2 has been amended twice since its enactment, most recently in 2003.  The
amendments are not germane to the issues in this proceeding.

18

be served by the claimant upon owners, mortgagees, holders of ground rents, liens and charges or estates of whatsoever kind as follows:

(1) By posting a true and correct copy of the petition and rule on the most public part of the property;

(2) By mailing by first class mail to the address registered by any interested party pursuant to [53 P.S. §7193.1] a true and correct copy of the petition and rule; and

(3) By reviewing a title search, title insurance policy or tax information certificate that identifies interested parties of record who have not registered their addresses pursuant to [53 P.S. §7193.1], the city shall mail by first class mail and either by certified mail, return receipt requested, or by registered mail to such addresses as appear on the  respective records relating to the premises a true and correct copy of the petition and rule.

Under §7193.2, the City is obliged to serve the rule to show cause by posting a copy of it at the subject property and mailing the petition and rule to any party whose interest in the subject property is apparent from a title search.  Further, §7193.2(a) mandates that "[t]he city shall file an affidavit of service with the court prior to seeking a decree ordering the sale of the premises."[22]

To summarize, I read §7283 as requiring that the court make an independent inquiry that service of the rule to show cause has been made in the manner required by the MCTLL.  The MCTLL now requires that service of the §7283 petition and the rule to show cause issued by the court be made on all parties who have a recorded interest in the subject property in the manner set forth in §7193.2(a).

In this proceeding, the Sale Petition, on its face, identifies the following parties (other than the Debtor) as having an interest in the subject property:

---

[22]     The quoted language is part of a "hanging paragraph" that follows §7193.2(a)(3) and that is not otherwise codified.

19

**Rachel Blaylock, Owner**                     **Attorney General, Federal lien**
**United State Attorney, Federal lien**        **Blue View Corporation, Mortgagee**
**Miriam Bubbis, Mortgagee**                   **and Philadelphia School District Tax Claim**

Exhibit C-3 (Sale Petition ¶4).[23]

Under the MCTLL, these interested parties are entitled to service of the Sale Petition and

the rule to show cause.   The City presented no evidence that it served the petition or writ on any

of these parties, that it posted the Property or that it published notice of the rule in a newspaper of

general circulation in the county.  Further, the City has not complied with the procedural

requirement of 53 P.S. §7193.2(a) that it file an affidavit of service "prior to seeking a decree

ordering the sale of the premises."[24]

On this record, I am not satisfied that the other interested parties have received notice of

this proceeding in the manner and as required by §7283.  Because §7283 expressly makes proper

service a requirement for the issuance of an order authorizing a sale of property free and clear of

liens, the City has not proven all of the elements of its claim under §7283.

---

[23]     The Sale Petition is not entirely consistent with the attached Tax Information Certificate.
The Tax Information Certificate makes no reference to the United States or the Philadelphia School
District.

[24]     The dockets of the CP Court do not reflect that the City filed an affidavit of service prior
to the removal of the proceeding to this court.  Nor did the City file an affidavit of service in this court.

## IV.  CONCLUSION

For the reasons set forth above, I conclude that the Sale Petition should be denied for lack of proper service.  An Order consistent with this Memorandum will be entered.


**Date:  September 10, 2008**                    _____
                                                **ERIC L. FRANK**
                                                **U.S. BANKRUPTCY JUDGE**

21